**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **RONNEY GARCIA,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | **CIVIL ACTION NO.: _____** |
| **v.** | § | |
| | § | **JURY DEMANDED** |
| **LOWE'S COMPANIES, INC.** | § | |
| | § | |
| *Defendant*, | § | |

---

## PLAINTIFF'S ORIGINAL PETITION

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff Ronney Garcia (hereinafter "Plaintiff" or "Mr. Garcia") files this Original Petition complaining of and about Defendant, Lowe's Companies, Inc. (hereinafter "Defendant" or "Lowe's"), and for cause of action against it, would show the Court as follows:

### I.     NATURE OF THE CLAIMS

1.     This action is filed under Title VII of the Civil Rights Act of 1964, Age Discrimination in Employment Act ("ADEA"), Chapter 21 of the Texas Labor Code, and Family Medical Leave Act ("FMLA") to seek relief and correct unlawful employment practices by Lowe's including age discrimination and retaliation, sex discrimination, and unlawful FMLA interference and retaliation.

2.     This complaint seeks to recover actual and compensatory damages, including lost wages and benefits in the past and future, in an amount within the jurisdictional limits of the Court. Plaintiff also seeks an award of damages for his mental anguish and pain and suffering he has

1

suffered, continues to suffer, and will suffer in the future. Lastly, Plaintiff seeks to recover punitive damages, attorneys' fees, pre-judgment and post-judgment interest, and costs of court.

## II.     PARTIES AND SERVICE

3.      Plaintiff, Ronney Garcia, is a citizen of the United States and the State of Texas and resides in Harris County, Texas. Plaintiff is a former employee of Defendant.

4.      Defendant, Lowe's Companies, Inc. (hereinafter "Defendant" or "Lowe's") is a corporation, that maintains its principal place of business at 1605 Curtis Bridge Rd. Wilkesboro, NC 28697-2231. Defendant does business in Texas and can be served with process through its Registered Agent for Service, Corporation Service Company dba CSC – Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

## III.     JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1331 (2019) as this case presents Federal questions, namely claims pursuant to Title VII of the Civil Rights Act of 1964, ADEA, and FMLA.

6.      This Court also has supplemental jurisdiction under 28 U.S.C. §1367, which gives the district court supplemental jurisdiction over state law claims, namely claims pursuant to the Texas Labor Code.

7.      This Court has personal jurisdiction over Defendant since it maintains sufficient contacts with the state of Texas. For years, Defendant has conducted business and provided services in many cities throughout the state of Texas, and it continues to do so.

8.      Venue is proper in the Southern District of Texas, Houston Division pursuant to 28 U.S.C. § 1391(b) because it is the judicial district in which the substantial part of the events or omissions giving rise to these causes of actions occurred.

### IV.        CONDITIONS PRECEDENT

9.        On July 21, 2021, Plaintiff timely filed a Charge of Discrimination against the Defendant with the Houston Division of the Equal Employment Opportunity Commission, EEOC Charge No.460-2021-01258. Plaintiff received a Right to Sue Notice from the EEOC on September 3, 2021. Plaintiff files this complaint within 90 days of receiving the notice of right to sue. All conditions precedent to filing this lawsuit have been performed or have occurred.

### V.        FACTUAL BACKGROUND

10.        Mr. Garcia began his employment with Lowe's in 2004 as an Assistant Manager. At the time of his termination, Mr. Garcia was a Merchandise Manager and began reporting to the new Manager of his store in early 2020. There is simply no doubt that Mr. Garcia was a competent and dedicated employee especially after 16 years of employment with Lowe's. During his tenure at Lowe's, Mr. Garcia had multiple good reviews; always received a yearly raise; and never had any customer complaints. However, despite Mr. Garcia's dedication to Lowe's, numerous incidents eventually led to his wrongful termination in December of 2020.

11.        Lowe's Human Resources ("HR") team unfortunately had a history of ignoring complaints made by employees. In 2017, Mr. Garcia was assaulted in the store during a robbery. He was forced to take leave due to his injuries. However, he was forced to return early after Lowe's doctor, that Mr. Garcia was instructed to see by Lowe's workers' compensation department, erroneously determined that Mr. Garcia was not injured by the assault. Once Mr. Garcia returned to work, he attempted to discuss his concerns regarding the assault and robbery with HR and management. However, management and HR completely ignored his concerns, and instead, issued him a write-up for allegedly failing to follow company protocol regarding robberies.

3

12.     Mr. Garcia refused to sign the write-up because he knew it was inappropriate and he did not violate company policy. To make matters worse, not only was Mr. Garcia severely injured during the incident, soon after the incident he was informed that the video of his assault was circulated to the other Lowe's stores. Completely embarrassed and appalled by his coworkers viewing a video of him being physically assaulted, Mr. Garcia reported the misconduct to HR. Again, he was ignored, and HR failed to take any actions to protect Mr. Garcia's privacy after he was brutally beaten while on duty.

13.     Interestingly, while Lowe's attempted to issue Mr. Garcia a write-up for allegedly failing to follow company protocol, there had been several instances of other employees violating company protocols without any repercussions as discussed below.

14.     In January of 2020, when Lowe's hired a new manager, Manager Quinones, the work environment at Lowe's only worsened. After Manager Quinones was hired, Mr. Garcia was constantly singled out in front of his coworkers, ridiculed, and made fun of because of his age. As part of her campaign of harassment, in February of 2020, Manager Quinones singled Mr. Garcia out in a team meeting, and without any evidence, accused him of wrongfully marking down prices for products in the store. Later it was discovered that the prices were marked down due to a company directive. Mr. Garcia was the only individual that was accused of wrongfully marking down prices for products in the store and Manager Quinones provided no basis for her unsubstantiated accusations.

15.     Harassment and discriminatory comments were constantly made during meetings and in front of other managers by Manager Quinones. During one such meeting, Manager Quinones made comments referencing that she knew how old each manager was and how much they were paid. She further referenced that she wanted to determine who was the oldest Assistant

Store Manager because she wanted to make sure older employees were "worth every penny" that they were paid. Once Manager Quinones discovered the ages of each management employee, she made negative comments regarding the "oldest" person in management, referring to Mr. Garcia, who was the oldest and most senior manager.

16.     After these comments were made, in front of the leadership team, upper management warned Manager Quinones regarding the inappropriateness and discriminatory nature of her comments. After the conversation with upper management, Manager Quinones' comments stopped for a short period, however, this did not last long, and soon enough Mr. Garcia was subjected to her continued harassment, retaliation and discriminatory actions regarding his age.

17.     In March of 2020, at the beginning of the Covid-19 pandemic, Mr. Garcia unfortunately contracted Covid-19, likely from another coworker who was not wearing a mask. Mr. Garcia was at home recovering and quarantining and thus, unable to work for two weeks. While he was out recovering from Covid-19, Manager Quinones referred to him as a "dumb ass" in a management team meeting. When Mr. Garcia could not come to work, due to having symptoms of Covid-19, he was constantly harassed via text message by Manager Quinones, questioning whether he really had symptoms and demanding he get tested for the virus each day that he was out.

18.     As if Manager Quinones' constant harassment and disparagement was not enough, to make matters worse, soon after Mr. Garcia returned to work, without any real explanation, he was replaced by another employee who Mr. Garcia previously trained. This individual was not only less qualified than Mr. Garcia but not coincidentally *younger* than Mr. Garcia. Over time it became more obvious that Manager Quinones preferred younger employees.

19.     While Mr. Garcia was never given an official reason for being replaced by another younger employee, soon after, Manager Quinones made comments about Mr. Garcia "walking slow" and with a limp, to him and other employees. Manager Quinones often completely disregarded employees' disabilities or limitations and often used this as an excuse to label them as being "lazy" or incapable of performing their job duties. On one occasion, Manager Quinones stated that individuals, including Mr. Garcia, that sit on stools at the front of the store, are "lazy" and "give the store a bad image." Further she stated that they should be working out of sight from the customers. It is important to note that all the employees Manager Quinones targeted were older employees and these specific employees received stools as an accommodation. However, this did not stop Manager Quinones from ridiculing them for needing stools.

20.     Manager Quinones also stated that the "plant-watering team," that consisted of three (3) older employees, were lazy because they "can't move fast."  Despite these employees being hardworking and having no issues in the workplace, Manager Quinones reduced their hours and changed their schedules solely because she believed they were "lazy" and "slow," but more specifically because they were older. Mr. Garcia and other managers noticed that this was a pattern on Manager Quinones' team because multiple older employees had their hours reduced and schedules changed without any reason and thereafter Manager Quinones routinely made discriminatory comments related to their age.

21.     Manager Quinones' discriminatory actions even went so far as to instruct managers to hire "younger employees." During the hiring process, when a qualified-older applicants applied for a position, Manager Quinones often found some reason for the applicant to not move forward in the hiring process. However, younger, and often less qualified applicants, were routinely prioritized over older applicants. This also became a hiring pattern under Manager Quinones'

6

management and several other managers, including Mr. Garcia, began to take notice of her discriminatory hiring practices.

22.     Manager Quinones' inappropriate behavior was not only age-related discrimination, as she often made inappropriate sexual comments. In November 2020, Mr. Garcia was walking through the store and bent over to fix a product when his pants accidentally slipped down. When Mr. Garcia turned around, he realized Manager Quinones was directly behind him. Mortified, Mr. Garcia quickly apologized for the incident and told Manager Quinones his pants were too large and that is why they slipped down. The next day, the entire management team knew about the incident and Manager Quinones continuously made comments about Mr. Garcia's rear end. The sexual jokes continued for a week and included the management team sending photos to one another of a scare crow that had a pumpkin rear end with his pants pulled down.

23.     With the Covid-19 pandemic, Manager Quinones' harassment grew especially aggressive. Not only did Manager Quinones' discriminatory comments continue, but she also failed to follow company policy, including but not limited to: (a) threatening an employee that she would file a sexual harassment claim against him if he did not put in his two weeks' notice merely because he asked her if she would attend an event with him, (b) unauthorized deductions from employees' paychecks, (c) threatening employees who took leave due to Covid-19, and stating she was going to make it "uncomfortable" for employees who took time off due to Covid-19, and (d) allowing cashiers to mislead customers into applying for Lowe's credit cards to increase the number of credit card applications the store received.

24.     Due to his age and Manager Quinones' discriminatory comments and actions, it was only a matter of time before Manager Quinones found a baseless reason to terminate Mr. Garcia. Manager Quinones' opportunity came in December of 2020 when all of these events

eventually culminated and led to the false accusation against Mr. Garcia, a flawed investigation and ultimately Mr. Garcia's wrongful termination.

25.     On December 16, 2020, without any prior warnings or questioning, Mr. Garcia was terminated for allegedly sexually harassing another employee. This came as a complete surprise to Mr. Garcia because in his 16 plus years at Lowe's, and during his 30 plus years in management, he has never sexually harassed anyone, nor been accused of sexual harassment. Additionally, Mr. Garcia had a good relationship with the alleged accuser. In fact, the employee and Mr. Garcia often discussed their weight loss journeys with each other and other non-sexual topics like clothing and their faith. During this three-year friendship, Ms. Smiley never indicated or stated she felt uncomfortable by anything Mr. Garcia did or said.

26.     During the termination meeting, Manager Quinones provided no basis or information regarding the allegations, and, prior to the termination meeting, Mr. Garcia was never questioned regarding the allegations. While other employees accused of sexual harassment had been provided an opportunity to hear the accusations and tell their side of the story, despite 16 plus years of dedication to Lowe's, never being accused of inappropriate behavior, nor having any customer complaints, Mr. Garcia was never given an opportunity to address the allegations and instead was immediately terminated. It was clear that Manager Quinones, again unethically violated company protocol by either manufacturing the allegations or by not fully investigating the allegations and took this as an opportunity to pretextually terminate Mr. Garcia because she felt he, like many other older employees, was too slow and incapable of doing his job and took too much time off for a Covid-19 related illnesses.

27.     This is further proven by the fact that at least one other store manager that was accused of sexual harassment, was merely transferred to another store, after a <u>full and proper</u>

investigation was performed and even after the claims were substantiated. However, Mr. Garcia was terminated immediately without Manager Quinones and/or the HR department even remotely conducting a full and proper investigation.

## VI.    CAUSES OF ACTION

**COUNT NO. 1 – AGE DISCRIMINATION UNDER TITLE VII**

28.    Plaintiff re-asserts and incorporates by reference all the facts set forth in the above numbered paragraphs.

29.    Plaintiff filed a timely charge of age discrimination with the EEOC and has satisfied all conditions precedent to bringing this action. Plaintiff exhausted his administrative remedies and timely files this suit following notice of his right to sue.

30.    At all relevant times, Defendant has been, and continues to be, an employer within the meaning of Title VII. At all relevant times, Defendant has employed, and continues to employ, 15 or more employees.

31.    Plaintiff was an employee of the company and as a man over 40 years of age, a member of a protected group.

32.    Plaintiff was subjected to age discrimination under Title VII when he was constantly singled out in front of his coworkers, ridiculed, and made fun of because of his age.

33.    Manager Quinones made comments referencing that she knew how old each manager was and how much they were paid. She further referenced that she wanted to determine who was the oldest Assistant Store Manager because she wanted to make sure older employees were "worth every penny" that they were paid. Once Manager Quinones discovered the ages of each management employee, she made negative comments regarding the "oldest" person in management, referring to Mr. Garcia, who was the oldest and most senior manager.

34.     After Mr. Garcia returned to work from his FMLA leave, without any real explanation, he was replaced by another manager who Mr. Garcia previously trained. This individual was not only less qualified than Mr. Garcia but not coincidentally *younger* than Mr. Garcia.

35.     Manager Quinones made comments about Mr. Garcia "walking slow" and with a limp, to him and other employees. Manager Quinones often completely disregarded employees' disabilities or limitations and often used this as an excuse to label them as being "lazy" or incapable of performing their job duties.

36.     Manager Quinones stated that individuals, including Mr. Garcia, that sit on stools at the front of the store, are "lazy" and "give the store a bad image". Further she stated that they should be working out of sight from the customers. Manager Quinones targeted older employees and these specific employees received stools as an accommodation. However, this did not stop Manager Quinones from ridiculing them for needing stools.

37.     Manager Quinones also stated that the "watering team," that consisted of three (3) older employees, were lazy because they "can't move fast."  Despite these employees being hardworking employees and having no issues in the workplace, Manager Quinones reduced their hours and changed their schedules solely because she believed they were "lazy" and "slow," a coded reference to their age. Mr. Garcia and other managers noticed that this was a pattern on Manager Quinones' team because multiple older employees had their hours reduced and schedules changed without any reason and thereafter Manager Quinones routinely made discriminatory comments related to their age.

38.     Manager Quinones' discriminatory actions even went so far as to instruct managers to hire "younger employees." During the hiring process, when a qualified-older applicants applied

for a position, Manager Quinones often found some reason for the applicant to not move forward in the hiring process. However, younger, and often less qualified applicants, were routinely prioritized over older applicants. This also became a hiring pattern under Manager Quinones' management and several other managers, including Mr. Garcia, began to take notice of her discriminatory hiring practices.

39.     Due to his age and Manager Quinones' discriminatory comments and actions, Manager Quinones found a baseless reason to terminate Mr. Garcia. Manager Quinones' opportunity came in December of 2020 when all of these events eventually culminated and led to the false accusation against Mr. Garcia, a flawed investigation and ultimately Mr. Garcia's wrongful termination.

40.     Defendants' discriminatory conduct, in violation of Title VII, has caused Plaintiff to suffer a loss of pay, benefits and prestige. Additionally, Plaintiff has suffered mental and emotional distress. Lastly, Defendants have engaged in discriminatory practices with malice and reckless indifference to Plaintiff's federally protected rights, thereby entitling him to punitive damages pursuant to Title VII.

## COUNT NO. 2 – AGE DISCRIMINATION UNDER CHAPTER 21 OF THE TEXAS LABOR CODE

41.     Plaintiff re-asserts and incorporates by reference all the facts set forth in the above-numbered paragraphs.

42.     As set forth above, Defendant, by and through its agents and employees, engaged in unlawful employment practices in violation of Chapter 21 of the Texas Labor Code. TEX. LAB. CODE § 21.051.

43.     At all relevant times, Defendant has been, and continues to be, an employer within the meaning of the Texas Labor Code.

44.     Plaintiff was an employee of the company and as a man over 40 years of age, a member of a protected group.

45.     Plaintiff was subjected to age discrimination under the Texas Labor Code when he was constantly singled out in front of his coworkers, ridiculed, and made fun of because of his age.

46.     Manager Quinones made comments referencing that she knew how old each manager was and how much they were paid. She further referenced that she wanted to determine who was the oldest Assistant Store Manager because she wanted to make sure older employees were "worth every penny" that they were paid. Once Manager Quinones discovered the ages of each management employee, she made negative comments regarding the "oldest" person in management, referring to Mr. Garcia, who was the oldest and most senior manager.

47.     After Mr. Garcia returned to work from his FMLA leave, without any real explanation, he was replaced by another manager who Mr. Garcia previously trained. This individual was not only less qualified than Mr. Garcia but not coincidentally *younger* than Mr. Garcia.

48.     Manager Quinones made comments about Mr. Garcia "walking slow" and with a limp, to him and other employees. Manager Quinones often completely disregarded employees' disabilities or limitations and often used this as an excuse to label them as being "lazy" or incapable of performing their job duties.

49.     Manager Quinones stated that individuals, including Mr. Garcia, that sit on stools at the front of the store, are "lazy" and "give the store a bad image". Further she stated that they should be working out of sight from the customers. Manager Quinones targeted older employees

and these specific employees received stools as an accommodation. However, this did not stop Manager Quinones from ridiculing them for needing stools.

50.     Manager Quinones also stated that the "watering team," that consisted of three (3) older employees, were lazy because they "can't move fast."   Despite these employees being hardworking employees and having no issues in the workplace, Manager Quinones reduced their hours and changed their schedules solely because she believed they were "lazy" and "slow," a coded reference to their age. Mr. Garcia and other managers noticed that this was a pattern on Manager Quinones' team because multiple older employees had their hours reduced and schedules changed without any reason and thereafter Manager Quinones routinely made discriminatory comments related to their age.

51.     Manager Quinones' discriminatory actions even went so far as to instruct managers to hire "younger employees." During the hiring process, when a qualified-older applicants applied for a position, Manager Quinones often found some reason for the applicant to not move forward in the hiring process. However, younger, and often less qualified applicants, were routinely prioritized over older applicants. This also became a hiring pattern under Manager Quinones' management and several other managers, including Mr. Garcia, began to take notice of her discriminatory hiring practices.

52.     Due to his age and Manager Quinones' discriminatory comments and actions, Manager Quinones found a baseless reason to terminate Mr. Garcia. Manager Quinones' opportunity came in December of 2020 when all of these events eventually culminated and led to the false accusation against Mr. Garcia, a flawed investigation and ultimately Mr. Garcia's wrongful termination.

53.     Defendants' discriminatory conduct, in violation of the Texas Labor Code, has caused Plaintiff to suffer a loss of pay, benefits and prestige. Additionally, Plaintiff has suffered mental and emotional distress. Lastly, Defendants have engaged in discriminatory practices with malice and reckless indifference to Plaintiff's state protected rights, thereby entitling him to punitive damages pursuant to the Texas Labor Code.

**COUNT NO. 3 – RETALIATION UNDER TITLE VII AND TEXAS LABOR CODE**

54.     Plaintiff re-asserts and incorporates by reference all the facts set forth in the above-numbered paragraphs.

55.     Plaintiff re-asserts and incorporates by reference all the facts set forth in the above-numbered paragraphs.

56.     Plaintiff filed a timely charge of age discrimination with the EEOC and has satisfied all conditions precedent to bringing this action. Plaintiff exhausted his administrative remedies and timely files this suit following notice of his right to sue.

57.     After Manager Quinones made discriminatory comments in front of the leadership team, upper management warned Manager Quinones regarding the inappropriateness and discriminatory nature of her comments. After the conversation with upper management, Manager Quinones' comments stopped for a short period, however, this did not last long, and soon enough Mr. Garcia was subjected to her continued harassment, retaliation, and discriminatory actions regarding his age.

58.     As if Manager Quinones' constant harassment and disparagement was not enough, to make matters worse, soon after Mr. Garcia returned to work, without any real explanation, he was replaced by another employee who Mr. Garcia previously trained. This individual was not

only less qualified than Mr. Garcia but not coincidentally *younger* than Mr. Garcia. Thus, Lowes retaliated against Plaintiff by replacing him with someone younger than him.

59.     It was only a matter of time before Manager Quinones found a baseless reason to terminate Mr. Garcia. Manager Quinones ultimately retaliated against Plaintiff in December of 2020 when all of these events eventually culminated and led to the false accusation against Mr. Garcia of sexual harassment, a flawed investigation and ultimately Mr. Garcia's wrongful termination.

60.     Defendant's discriminatory conduct, in violation of Title VII and the Texas Labor Code, has caused Plaintiff to suffer a loss of pay, benefits, and prestige. Additionally, Plaintiff has suffered mental and emotional distress. Lastly, Defendant has engaged in discriminatory and retaliatory practices with malice and reckless indifference to Plaintiff's federally protected rights, thereby entitling her to punitive damages pursuant to Title VII and the Texas Labor Code.

## COUNT NO. 4 – SEXUAL HARASSMENT UNDER TITLE VII AND TEXAS LABOR CODE

61.     Plaintiff realleges and incorporates herein by reference the foregoing paragraphs.

62.     Plaintiff filed a timely charge of discrimination and has satisfied all conditions precedent to bringing this action. Plaintiff exhausted his administrative remedies and timely files this suit following notice of his right to sue.

63.     As set forth above, Defendant, by and through its agents and employees, engaged in unlawful employment practices in violation of Chapter 21 of the Texas Labor Code. TEX. LAB. CODE § 21.051.

64.     At all relevant times, Defendant has been, and continues to be, an employer within the meaning of Title VII and the Texas Labor Code.

65.     Plaintiff was subjected to sexual harassment whenever Manager Quinones made inappropriate sexual comments. Additionally, in November 2020, Mr. Garcia was walking through the store and bent over to fix a product when his pants accidentally slipped down. When Mr. Garcia turned around, he realized Manager Quinones was directly behind him. Mortified, Mr. Garcia quickly apologized for the incident and told Manager Quinones his pants were too large and that is why they slipped down. The next day, the entire management team knew about the incident and Manager Quinones continuously made comments about Mr. Garcia's rear end. The sexual jokes continued for a week and included the management team sending photos to one another of a scare crow that had a pumpkin rear end with his pants pulled down.

66.     Defendant's discriminatory conduct, in violation of Title VII and the Texas Labor Code, has caused Plaintiff to suffer a loss of pay, benefits, and prestige. Additionally, Plaintiff has suffered mental and emotional distress. Lastly, Defendant has engaged in discriminatory and retaliatory practices with malice and reckless indifference to Plaintiff's federally protected rights, thereby entitling her to punitive damages pursuant to Title VII and the Texas Labor Code.

**COUNT NO. 5 – FMLA INTERFERENCE**

67.     Plaintiff realleges and incorporates herein by reference the foregoing paragraphs.

68.     The FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise an employee's FMLA rights. Employers are also prohibited from discrimination or retaliating against an employee or prospective employee for having exercised or attempted to exercise any FMLA right. 29 CFR § 825.220

69.     In March of 2020, at the beginning of the Covid-19 pandemic, Mr. Garcia unfortunately contracted Covid-19, likely from another coworker who was not wearing a mask. Mr. Garcia was at home recovering and quarantining, and thus unable to work for two weeks.

While he was out recovering from Covid-19 Manager Quinones referred to him as a "dumb ass" in a management team meeting. When Mr. Garcia could not come to work due to having symptoms of Covid-19, he was constantly harassed via text message by Manager Quinones, questioning whether he really had symptoms and demanding he get tested for the virus each day that he was out.

70.     While Mr. Garcia was out on leave due to Covid-19, he was constantly harassed by Manager Quinones, questioned if he really had symptoms and demanded to get tested for the virus each day he was out. Manager Quinones even stated that she would make it "uncomfortable" for employees who took time off due to Covid-19.

71.     As such, Defendant directly interfered with Mr. Garcia's FMLA leave and further discouraged him from using such leave in direct violation of Section 825.220 of the FMLA.

**COUNT NO. 6 – FMLA RETALIATION**

72.     Plaintiff realleges and incorporates herein by reference the foregoing paragraphs.

73.     At all relevant times, Lowe's was an employer with more than 50 employees.

74.     Plaintiff worked more than 1,250 hours over the twelve months preceding his FMLA leave.

75.     Mr. Garcia suffered an adverse employment action when he was replaced by a younger employee, that he previously trained and without any explanation, when he returned from leave. Additionally, Mr. Garcia suffered an adverse employment action when he was wrongfully terminated after he was falsely accused of sexual harassment where Defendant either failed to conduct an investigation or conducted a flawed investigation.

76.     Further, Plaintiff was not only accused of sexual harassment but when the accusations were sustained after an internal investigation, he was immediately terminated even

though the allegations against him were never proven. Alternatively, Plaintiff knows of one other employee who was also accused of sexual harassment, but after his allegations were sustained, he was merely transferred to another Lowe's location.

77.     As such, Defendant retaliated against Mr. Garcia for taking his FMLA leave by terminating him.

## VII.    DAMAGES

78.     Plaintiff sustained damages as a result of the actions and/or omissions of Defendants described herein. Accordingly, Plaintiff is entitled to an award of actual and compensatory damages, including lost wages and benefits in the past and future, in an amount within the jurisdictional limits of the Court. Plaintiff also seeks an award of damages for his mental anguish and pain and suffering he has suffered, continues to suffer, and will suffer in the future.

79.     Additionally, as a result of Defendant's above-referenced actions and/or omissions, Plaintiff was required to retain counsel to protect and enforce his legal rights. Accordingly, Plaintiff also seeks compensation for his attorneys' fees, pre-judgment and post judgment interest, out-of-pocket expenses, expert fees and costs of Court he will have incurred in this action.

## VIII.   PUNITIVE DAMAGES

80.     Plaintiff would further show that the acts and omissions of Defendant complained of herein were committed with malice or reckless indifference to his protected rights. In order to punish said Defendant for engaging in unlawful business practices and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendant for punitive damages.

## IX.     JURY DEMAND

81.     Plaintiff respectfully requests a trial by jury on all issues to be tried in this matter

## X.    PRAYER

For the reasons set forth above, Plaintiff Ronney Garcia respectfully prays that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for:

a. All damages to which Plaintiff may be entitled pursuant to this Original Complaint, or an amendment thereto, including but not limited to actual and compensatory damages, including lost wages and benefits in the past and future in an amount within the jurisdictional limits of the Court.

b. Mental anguish and pain and suffering that he continues to suffer and will suffer.

c. Reasonable attorney's fees as allowed by law, with conditional awards in the event of appeal;

d. Prejudgment interest at the highest rate permitted by law; Post-judgment interest from the judgment until paid at the highest rate permitted by law;

e. Punitive damages in an amount above the minimum jurisdictional limits of the Court;

f. Out of pocket expenses, expert fees, Costs of Court; and

g. Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Complaint or by proper amendment thereto.

Respectfully submitted,
TB Robinson Law Group, PLLC


Terrence B. Robinson
SD Bar No. 14218
Texas Bar No. 17112900
TRobinson@TBRobinsonlaw.com
Dania Masood
SD Bar No. 3574453
Texas Bar No. 24118459
DMasood@TBRobinsonlaw.com
7500 San Felipe St., Suite 800
Houston, Texas 77063
Phone: (713) 568-1723
Facsimile: (713) 965-4288
**ATTORNEYS FOR PLAINTIFF**